**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN P. MYERS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Case No. _____** |
| **v.** | : | |
| | : | |
| **WELLS FARGO BANK, N.A. d/b/a** | : | |
| **WELLS FARGO HOME MORTGAGE,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT

The Plaintiff, KEVIN P. MYERS, (hereinafter, "Plaintiff"), by counsel, and for his

Complaint against Defendant, alleges as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action for actual, statutory and punitive damages, costs and attorney's

fees brought against all the Defendants pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit

Reporting Act or "FCRA").

### II.    JURISDICTION

2.    The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and

28 U.S.C. §1331.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### III.    PARTIES

4.    The Plaintiff, KEVIN P. MYERS ("Plaintiff"), is a natural person and a consumer

as defined by 15 U.S.C. § 1681a(c).

5.      Upon information and belief, WELLS FARGO BANK d/b/a WELLS FARGO HOME MORTGAGE ("Wells Fargo") is a national association doing business as a mortgage originator and servicer. At all relevant times hereto, Wells Fargo was a furnisher as governed by the FCRA.

## IV.      FACTS

6.      Plaintiff was injured on duty as a police officer for Radnor Township. Because he was injured and unable to work, he sought assistance to lower his monthly mortgage payments from Wells Fargo.

7.      Plaintiff applied for and was subsequently approved for a mortgage modification that lowered his monthly mortgage payments. At no time did he fail to make a payment in accordance with Wells Fargo's instructions and his mortgage modification paperwork.

8.      In June 2014, Plaintiff obtained a copy of his credit reports and learned that Wells Fargo was inaccurately reporting information regarding his mortgage account.

9.      In particular, Plaintiff's mortgage loan with Wells Fargo was inaccurately reporting that he was 30, 60, and 90 days past due on his account from March 2014 through June 2014. In fact, his credit report indicated he was past due $7,327 as of June 2014. This reporting was inaccurate.

10.     On or around August 25, 2014, Plaintiff sent a separate credit dispute letter to Equifax, Experian, and Trans Union, explaining that the credit bureaus were inaccurately reporting his Wells Fargo mortgage loan. In this letter, Plaintiff explained that he had never missed a mortgage payment and always paid as instructed to by Wells Fargo.

11.     Plaintiff's letter further indicated he applied for and was approved for a loan modification Trial Period Plan with an effective date of March 2014. He made his first payment

by March 2014 and made every other payment on or before the due date. Further, he received a permanent modification with an effective date of July 2, 2014 and always paid as instructed.

12.     Equifax provided its Investigation Results on or around September 19, 2014. Equifax's Investigation Results indicated that Wells Fargo had "updated" his account to indicate he was also 90-119 days past due for the month of July 2014 as well. Wells Fargo also continued to report Plaintiff as past due from March 2014 through June 2014.

13.     Similarly, on or around September 19, 2014, Experian and Trans Union provided their results of their investigations to the Plaintiff, which indicated that Wells Fargo verified that Plaintiff was delinquent on his mortgage payments from March 2014 through July 2014.

14.     On or about October 10, 2014, Plaintiff forwarded a follow-up dispute letter to the credit bureaus, indicating that they had failed to correct the inaccurate information in his credit files. Plaintiff explained that he had made all of his payments to Wells Fargo, but because of the inaccurate reporting he was recently denied credit and had his credit limit reduced.

15.     On or around November 10, 2014, Experian provided correspondence that indicated Wells Fargo refused to correct the inaccurate derogatory mortgage payment history.

16.     Similarly, Equifax provided its Investigation Results on or around November 12, 2014. Equifax's Investigation Results indicated that Wells Fargo refused to correct the inaccurate and derogatory payment history.

17.     Likewise, on or around November 13, 2014, Trans Union provided the results of its investigation to the Plaintiff. Equifax's Investigation Results indicated that Wells Fargo refused to correct the inaccurate and derogatory payment history.

18.     The Wells Fargo reporting was inaccurate. Plaintiff had always paid his mortgage to Wells Fargo in accordance with its instructions, including after the parties entered into the Trial Period Plan and permanent loan modification.

19.     Despite receiving notice from the credit reporting agencies concerning Plaintiff's disputes, Wells Fargo ignored the Plaintiff's disputes and refused to conduct a meaningful and reasonable investigation.

20.     Wells Fargo had actual knowledge of these inaccuracies and deliberately chose to continue to report the derogatory inaccurate information about Plaintiff.

21.     Plaintiff's credit reports were obtained from the credit reporting agencies on multiple occasions and have been reviewed by prospective and existing creditors and the inaccurate information reported by Wells Fargo has been a substantial factor in precluding Plaintiff from receiving credit, including a refinance of his mortgage at a time when interest rates were historically low.

22.     Wells Fargo's inaccurate portrayal of Plaintiff's payment history has resulted in at least one credit card denial, one reduction in credit limit, and a denial of an assumption to the Plaintiff.

### V.    COUNT ONE
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### Violation of 15 U.S.C. §1681s-2(b)(1)(A)
### (WELLS FARGO)

23.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

24.     On one or more occasions within the past two years, by example only and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

25.     When the Plaintiff mailed his disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as Wells Fargo.  It is an automated system and the procedures used by the CRAs are systemic and uniform.

26.     When Trans Union, Experian, or Equifax receive a consumer dispute, it translates that dispute into an "ACDV" form.

27.     Upon information and belief, the ACDV form is the method by which Wells Fargo has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

28.     On information and belief, the Plaintiff alleges that to date Wells Fargo has never complained to the CRAs about the amount of information they receive regarding a consumer dispute through the e-Oscar system or through ACDVs.

29.     If Wells Fargo receives a consumer dispute ACDV form, they are aware that they may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

30.     Based on the manner in which Trans Union, Experian, and Equifax responded to the Plaintiff's disputes, representing that Wells Fargo had "verified" or "updated" its reporting, Plaintiff alleges the credit reporting agencies did in fact forward the Plaintiff's dispute via an ACDV to Wells Fargo.

31.     Wells Fargo understood the nature of the Plaintiff's dispute when they received the ACDV from the credit bureaus.

32.     When Wells Fargo received the ACDV from the credit reporting agencies, it as well could have reviewed their own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

33.     Notwithstanding the above, Wells Fargo follows a standard and systemically unlawful process when they receive the ACDV dispute.  Basically, all Wells Fargo does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that they already had reported to the CRAs.

34.     When Wells Fargo receives a consumer dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

35.     As a result of Wells Fargo's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

36.     The violations by Wells Fargo were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Wells Fargo was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

37.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## VI.    COUNT TWO
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### Violation of 15 U.S.C. §1681s-2(b)(1)(B)
### (WELLS FARGO)

38.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

39.     On one or more occasions within the past two years, by example only and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

40.     As Plaintiff detailed in the previous Count, Wells Fargo has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

41.     Wells Fargo is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

42.     Wells Fargo does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

43.     Wells Fargo understood the Plaintiff's disputes and that the accounts were not reporting his payment history accurately.

44.     Nevertheless, it ignored such information and instead simply regurgitated the same information they had previously reported to the CRAs.

45.     As a result of Wells Fargo's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

46.     The violations by Wells Fargo were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Wells Fargo was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

47.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**KEVIN P. MYERS**

Dated: Oct. 26, 2015

By:      */s/ James A. Francis*
James. A. Francis
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel. (215) 735-8600
Fax (215) 940-8000
jfrancis@consumerlawfirm.com

Kristi C. Kelly *(pro hac vice forthcoming)*
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Tel: 703-424-7572
Fax: 703-591-0167
kkelly@kellyandcrandall.com

*Counsel for Plaintiff*